■ GEORGIA COSTALAS, Individually and as Administratrix of the Estate of GEORGE COSTALAS, Deceased, and as Natural Guardian of NICHOLAS COSTALAS and Another, Infants, Appellant, v CITY OF NEW YORK et al., Respondents.—Judgment, Supreme Court, New York County (Edward H. Lehner, J., and a jury), entered July 31, 1987, which, after a presentation of plaintiff's direct case, granted defendants' motion to dismiss the complaint, is unanimously reversed, on the law and the facts, judgment vacated, motion denied, complaint reinstated, and the matter remanded for a new trial, without costs.

During the evening of March 4, 1982, while Mr. George Costalas was driving a Volkswagen, he was killed in an accident, which allegedly involved a New York City sanitation truck. When he died, Mr. Costalas was 33 years old, married, and the father of two sons, ages 5 and 8.

In November 1982, Mrs. Georgia Costalas, individually and, as administratrix of the estate of Mr. Costalas, and, as natural

guardian of their two infant children, commenced, in the Supreme Court, New York County, an action against the City of New York, the New York City Sanitation Department, and "John Doe" (defendants) to recover damages for the alleged wrongful death of Mr. Costalas.

Following the joinder of issue, a jury trial took place in May 1987. The plaintiff's evidence concerning the defendants' liability consisted primarily of the testimony of Mr. George Rivera (Mr. Rivera).

Mr. Rivera testified that shortly after 9:00 P.M., on March 4, 1982, he was a passenger in an automobile (Rivera car) which was being operated by Mr. David Alvarez, his brother-in-law. The Rivera car was on 53rd Street in Kings County, and it was headed west toward Fourth Avenue. As the Rivera car approached the intersection of 53rd Street and Fourth Avenue, it halted immediately behind a New York City sanitation truck (truck), which was stopped "[i]n the middle of the intersection, past the white line". Since the truck blocked his view, Mr. Rivera could not see the traffic light (light) which hung overhead.

Furthermore, Mr. Rivera testified that, at the time the truck started to move westward, at about 10 miles per hour, he noticed the light was red. However, by the time the Rivera car had made a right turn, north onto Fourth Avenue, the light had turned green. After the Rivera car had gone approximately two car lengths into Fourth Avenue, Mr. Rivera for the first time noticed Mr. Costalas' Volkswagen (Volkswagen), traveling, at approximately 35 miles per hour, southward on Fourth Avenue, in a drizzling rain, towards 53rd Street. The Volkswagen proceeded into the intersection against a red light.

Thereafter, Mr. Rivera heard a loud sound, which caused him to look back, and, he saw

"the * * * truck put its brakes on, and I [saw] the Volkswagen trying to swerve around [the truck]. All [the Volkswagen] had was one lane, because [the truck] was blocking two lanes * * *

"[The Volkswagen] tried to go around the * * * truck, to the one open lane. That's when [the Volkswagen] went into a spin and hit the pole".
He did not see the truck and Volkswagen come into contact with each other. Following the crash, the truck continued to proceed west on 53rd Street.

After the plaintiff rested, the trial court granted defendants'

motion to dismiss the complaint, upon the ground that, as a matter of law, the plaintiff had failed to establish a prima facie case.

It is the law of this State that a driver of a motor vehicle must exercise "the requisite degree of reasonable care notwithstanding the invitation to proceed by the green light facing [him] *(see, Shea v Judson,* 283 NY 393, 398; *Talay v Del Vicario,* 74 AD2d 601; 1 NY PJI 2d 2:79)" *(Klayman v City of New York,* 130 AD2d 551, 554 [1987]). Pursuant to the doctrine of comparative negligence (CPLR 1411), which was adopted in this State in 1975, a driver who proceeds in the face of a green light may be found partially responsible, if he does not use reasonable care to avoid an accident *(see, Sontag v Mulkerin,* 63 AD2d 699 [1978]). A unanimous Court of Appeals states in *Derdiarian v Felix Contr. Corp.* (51 NY2d 308, 315 [1980], *rearg denied* 52 NY2d 784 [1980]) that "Because questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve". Moreover, this being a wrongful death case, the plaintiff is held to a lesser standard of proof, since the decedent is unavailable to recount his version of the events *(Noseworthy v City of New York,* 298 NY 76 [1948]; *see, Santos v City of New York,* 135 AD2d 426, 431 [1st Dept 1987]).

Applying the legal authority, *supra,* to our review of the record, we find that the trial court erred, since there are material issues of fact concerning the liability of defendants, which must be determined by a jury. Some (but not necessarily all) of those issues of fact are:

1. Since Mr. Rivera testified that the truck started to move across the intersection while the light was still red, was this act of the truck driver such a departure from the exercise of reasonable care as to constitute the proximate cause of the accident, even though, when the accident occurred, the light was green for the truck, and red for the Volkswagen?

2. In the case of *Leach v Patroon Cab Corp.* (27 AD2d 769, 770 [1967]), the court states "The conduct of both drivers approaching an intersection controlled by a traffic light must be consistent with reasonable care under the circumstances by exercising forebearance and caution regardless of the light". Based upon the test set forth in *Leach v Patroon Cab Corp. (supra),* did the truck driver exercise reasonable care?

3. Did the truck driver exercise reasonable care, in view of

the fact that it was drizzling on the night of the accident, which meant that driving conditions were more hazardous than if the weather had been dry?

We held in *Candelier v City of New York* (129 AD2d 145, 147 [1st Dept 1987]) that "As long as the record yields a view of the evidence upon which a jury could rationally find for the plaintiff, he is entitled to have the jury pass upon the case, and the complaint may not be dismissed".

Accordingly, we reverse, deny the motion to dismiss, reinstate the complaint, and remand for a new trial. Concur— Sandler, J. P., Ross, Kassal, Rosenberger and Wallach, JJ.